IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

**LAUREN ROTHER, KRYSTAL
COLEMAN, ALLA DANCU, JOSEPH
DRURY, JAMES JACKSON, RICKY
FULLER, LAURIE GALTELAND, YOUNG
EUN KIM, CATHY WELCH, MARY
SAFATY, MARGRETTA PFEFFER, GOYH
SAEPHANH, JONATHAN THOMAS
NICHOLS, TRISTA FLORES, MICQUAEL
WALKER, NAI SAECHAO, JOEY LAW,
DAVID PITTS, EVELYN GARFIELD,
TIMOTHY JONES, JENNIFER MANEJA,
SUSAN MATHENGE, AMANDA
MOFFITT, AKIRA OKAZAKI,
ANTONINA PRANTSEVICH, TONY
SENGMANYVONG and DANA
THOMPSON**,

      Plaintiffs,                                                                No. CV 08-161-MO

          v.                                                                        OPINION AND ORDER

**LESLIE LUPENKO, ANDREI LUPENKO
and TELELANGUAGE INC., an Oregon
corporation**,

      Defendants.

**MOSMAN, J.**,

      Former employees sued Telelanguage, Inc. and its owners for violations of federal and

state wage and hour laws. After trial, a jury returned a verdict for the plaintiffs on each claim.

The defendants now renew their motion for judgment as a matter of law.

1 – OPINION AND ORDER

**DISCUSSION**

To succeed in their motion for judgment as a matter of law, the defendants must show that "a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." Fed. R. Civ. P. 50(a); *see also* Fed. R. Civ. P. 50(b). "[I]n entertaining a motion for judgment as a matter of law, the court should review all of the evidence in the record." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). The "court must draw all reasonable inferences in favor of the nonmoving party" and "give credence to the evidence favoring the nonmovant." *Id.* at 150–51. The court should also "disregard all evidence favorable to the moving party that the jury is not required to believe," while still giving credence to the movant's evidence that is "uncontradicted and unimpeached, at least to the extent that that evidence comes from disinterested witnesses." *Id.*

Here, the only non-party witness was Blanche Michelle. She was impeached for bias because she currently works for the defendants, so the jury was not required to believe her. The same can be said for the party witnesses, who were, in any event, contradicted. For these reasons, the defense's testimonial evidence is disregarded.

**I.    <u>Breaks of 29 Minutes or Less</u>**

The jury found that several plaintiffs had not been paid for rest breaks. The parties

dispute whether these breaks were rest breaks or meal breaks. Rest breaks are compensated;

meal breaks are not. The defendants argue that a 29-minute break is a meal break as a matter of

law. (Def.'s Mem. in Supp. (#203) 3.) The relevant regulation reads, "Ordinarily 30 minutes or

more is long enough for a bona fide meal period. A shorter period may be long enough under

special conditions. The employee is not relieved if he is required to perform any duties, whether

active or inactive, while eating." 29 C.F.R. § 785.19(a). Due to the particular facts of this case, I

allowed the jury to find whether or not "special conditions" were established. The jury

instructions tracked the first two sentences of the regulation above and added, "If you find that

the meal period was not long enough to be a bona fide meal period, then the break counts as

hours worked." (Jury Instructions (#175) 24.)

The defendants have not pointed to any evidence the jury was required to believe that

establishes special circumstances, so I decline to reject the jury's verdict.[1]

---

[1] In their briefs, the parties ignore the "special circumstances" requirement and focus on the final sentence of the regulation, whether the employee is "required to perform any duties" while on the break. This reasoning fails because being completely relieved from work is an additional requirement for a meal break—not a substitute for special circumstances. In other words, it is a meal break if (1) it is long enough, absent special conditions, and (2) the employee was completely relieved of duty. The briefing by both parties only goes to the second prong, so it cannot overturn the jury's verdict.

3 – OPINION AND ORDER

II.    <u>**Underpayments of 1–5 Minutes**</u>

A few plaintiffs were awarded damages for underpayments of three minutes or less. The defendants argue that these underpayments should not be compensated because they are de minimis. (Def. Mem. in Supp. (#203) 4.) The Fair Labor Standards Act allows an employer to disregard de minimis periods, which are defined as "insubstantial or insignificant periods of time" that "cannot as a practical administrative matter be precisely recorded for payroll purposes." 29 C.F.R. § 785.47; *see also* Jury Instruction No. 26.

The defendants fail to point to any evidence that the jury was required to believe that shows that as a practical matter the time could not be precisely recorded. (Def. Mem. in Supp. (#203) 4.) On the contrary, the defendant's computerized timekeeping system actually did track minute-long breaks until it was programmed not to. The defense's argument that a minute is insignificant fails because it ignores the definition of de minimis: (1) the time period must be insubstantial or insignificant; and (2) it cannot be practically recorded. 29 C.F.R. § 785.47. Being a short amount of time alone is not enough, it must also be impractical to record it. I decline to overturn the jury's verdict under the defendants' de minimis argument.

### III.    <u>Meal Breaks under State Law</u>

The defense next argues that Oregon provides no private right of action for denying employees a meal break. (Def.'s Mem. in Supp. (#203) 5.) The defense misreads plaintiffs' claim. The plaintiffs did not claim they should have been given meal breaks; they claim that the time periods labeled "meal breaks," which do not need to be compensated, were actually "rest periods," which do need to be compensated. This issue is not addressed in the authority cited by the defense. *See Gafur v. Legacy Good Samaritan Hosp. & Med. Ctr.*, 161 P.3d 319 (Or. Ct. App. 2007), *aff'd in part, rev'd in part*, 185 P.3d 446 (Or. 2008). The plaintiffs' claim is that they were not paid for all the hours they worked because rest periods were improperly categorized as meal breaks. Therefore, I decline to overturn the jury's verdict as to meal breaks.

### IV.    <u>Improper Calculation of Penalties</u>

Defense counsel asks that the judgment be amended to correct the improper calculation of penalties by the jury. (Def.'s Mem. in Supp. (#203) 6–7.) The defense raises three claims of error by the jury: (1) erroneously allowing large penalty awards when no notice was given; (2) allowing penalty awards to Ms. Galteland; and (3) awarding different penalties to different plaintiffs for the same violation.

A.    *Full Penalty Wages Require Notice*

Oregon requires an employer to pay penalties to former employees for certain wage and hour violations. Or. Rev. Stat. § 652.150. These penalties are available only "if an employer willfully fails to pay any wages or compensation" as required by statute. *Id.* at (1). There are two levels of penalty damages, depending on whether the employee gives proper notice of nonpayment. *Id.* at (2). If the employee gives "written notice of nonpayment," and the employer pays the wages owed within 12 days, the penalty is capped at 100 percent of the unpaid amount. *Id.* Otherwise, and subject to other exceptions not relevant here, the penalty award is the employee's hourly wage multiplied by eight hours for every day until the employer pays, for up to 30 days. *Id.* at (1).

The defendants argue that notice was not given, so penalty damages should be capped at 100 percent of the unpaid amount. The plaintiffs' claim they gave notice (1) through a letter from the lead plaintiff, Lauren Rother, (2) through Ms. Rother's motion to certify the class, and (3) through the postcard response given by each individual plaintiff who joined the lawsuit.

1.    **Lauren Rother's Letter**

On January 14, 2008, Lauren Rother sent a letter saying:

> To Whom it May Concern:
>
> I do not think that Telelanguage has paid me all that you owe me. Please pay me what you still owe me.
>
> Sincerely,
>
> Lauren Rother (Def.'s Ex. 530.)

Three weeks later, she filed the complaint that began this suit. The plaintiffs argue that this notice is sufficient for Ms. Rother and for the 27 other plaintiffs who eventually joined the suit. I disagree.

"[Oregon Revised Statute §] 652.150 authorizes the imposition of a penalty only if the employer Wilfully fails to pay his employee's wages. An employer acts wilfully if, having the financial ability to pay wages *which he knows he owes*, fails to pay them. The statute was not intended to impose liability where the employer's refusal to pay wages is based upon a bona fide belief that he is not obligated to pay them." *Hekker v. Sabre Const. Co.*, 510 P.2d 347, 351 (Or. 1973) (en banc) (internal quotations and citations omitted) (emphasis added).

Because an employer is only liable for wages "he knows he owes," notice must, at a minimum, mean providing enough information to allow the employer to figure out what is owed and to whom.[2] This principle is as easily derived from common sense as from case law. An employer cannot write a check to correct the error without enough facts to determine how much to pay and to whom.

The plaintiffs argue that the amount owed is all in the employer's payroll data, so no further notice is required. I reject this argument. Where an employer has multiple employees, each making claims over multiple years, "Please pay me what you owe me" is insufficient to allow an employer to reasonably determine how much is owed, especially where, as here, the plaintiffs' theories of why the money was owed were not revealed until summary judgment, and even plaintiffs' counsel had not cleared up the exact amounts claimed until the final verdict form was prepared on the final day of trial.

---

[2] I interpret the notice provision in light of the willfulness provision because Oregon courts "do not look at one subsection of a statute in a vacuum; rather [they] construe each part together with the other parts in an attempt to produce a harmonious whole." *Lane Cnty v. Land Conservation & Dev. Comm'n*, 942 P.2d 278, 283 (Or. 1997).

### 2.    Motion to Certify the Class

The plaintiffs argue that the motion to certify the class implies that Ms. Rother's letter was notice on behalf of the class. (Pl.'s Resp. (#208) 10.) For the reasons above, I found that Ms. Rother's letter was insufficient to provide notice even herself, but I also reject the plaintiffs' argument that this letter was sent on behalf of the class. Ms. Rother's letter was written more than a year before the class was certified. An employer cannot determine what is owed to employees whose identity isn't known for another year, so this is not sufficient notice for an employer to determine what he owes and to whom.

### 3.    Consent to Join the Class Postcards

The plaintiffs next argue that the defendants were given sufficient notice of their wage claims through the postcards they returned to join the class action. *Id.* at 11. These postcards said the case title and number, various dates, and that plaintiff's contact information. The only statement on the card was "By signing and mailing this postcard, I am joining this lawsuit." (*See, e.g.*, Consent to Join Law Suit by Krystal Coleman (#30) 1.) For the reasons given above, this does not give the employer sufficient notice to determine what is owed.

### 4.    Other Litigation Events

Finally, I consider whether the litigation itself constituted notice under § 652.150. Through the unfolding litigation defendants eventually became aware of the amount owed, the reason for the claim, and to whom it was owed. If litigation constitutes notice under § 652.150, then the plaintiffs are entitled to the higher penalty awards.

To determine whether the word "notice" includes notice through the process of litigation, I apply Oregon's standard methodology. *See State v. Gaines*, 206 P.3d 1042, 1050–51 (9th Cir. 2009). The first step of the analysis is to consider the text and context of the statute. *Gaines*, 206 P.3d at 1050. The second step is to consider the legislative history. *Id.* at 1051.

I find that applying Oregon's rules of construction, the text prohibits the litigation process alone from serving as notice under § 652.150. Notice by litigation would violate the intent of the wage and hour laws generally and the specific, stated intent of the statute's author. The theory is undermined further by discussions in both chambers of the state legislature, and it would contradict the general design of the wage and hour laws to discourage litigation.

### a.    Text of the Statute

To analyze statutory text, Oregon courts "consider[] rules of construction of the statutory text that bear directly on how to read the text." *Portland Gen. Elec. Co. v. Bureau of Labor & Indus.*, 859 P.2d 1143, 1146 (Or. 1993), *overruled on other grounds by Gaines*, 206 P.3d 1050–51. One mandatory rule of construction is to "give effect to all" provisions of a statute. Or. Rev. Stat. § 174.010. Under a textual analysis, I find that allowing litigation to serve as notice would make the notice requirement superfluous, which would violate my duty to give effect to all provisions in the statute.

Under Oregon Revised Statute § 652.150, obtaining penalty wages requires both notice and litigation.  The statute clearly contemplates both.  That is, notice is a prerequisite to obtaining penalty wages, and (absent private settlement) litigation and a judgment in court are necessary to enforce a claim for penalty wages.  But if litigation alone can serve as notice, then the statutory prerequisites to penalty wages have been cut in half, and the text about "written notice of nonpayment" is rendered superfluous.  Under the litigation-as-notice theory, litigation, and litigation alone, is all that is needed to enforce a claim for penalty wages.  Because omitting the notice requirement violates Oregon's rules of statutory construction, I reject the argument that notice was given by litigation.

### b.    Unnecessary Delay

The purpose of the wage and hour laws as determined by state courts further supports this finding.  The Oregon Supreme Court determined that the "central purpose" of the wage and hour statutes is that an employee "shall be assured of prompt payment for his labors when the relationship is terminated." *Lamy v. Jack Jarvis & Co., Inc.*, 574 P.2d 1107, 1111 (Or. 1978). Litigation can easily take months or years. Allowing litigation to substitute for notice would delay payment to the employee, contradicting the "central purpose" of the wage and hour statutes. This point is particularly salient here, where plaintiffs' counsel did not fully reveal the theories of why the plaintiffs were owed unpaid wages until summary judgment, with some theories not revealed until the pretrial conference.

Litigation also delays payment to the employee because it often adds attorney fees that must be resolved before the parties can settle. An attorney hoping to earn 500 times the plaintiffs' unpaid wages may have an incentive to unnecessarily obstruct settlement negotiations over his own fees. Proper notice may have allowed the parties to settle quickly, compensating the plaintiffs years ago and avoiding needless attorney fees.

### c. Grossly Imbalanced Fees Undermine the Statute's Author's Stated Intent

The bill's author's stated purpose for the bill was to combat what were seen as grossly imbalanced penalties for a company's honest mistakes. Penalties for Violations of Wage Laws: Hearing on H.B. No. 2867 Before the H. Comm. on Bus., Labor & Consumer Affairs, 2001 Leg., 71st Sess. Tape 114, A 342, at 45:00–45:12 (Or. May 15, 2001) (statements of J.L. Wilson). At a committee work session the author gave what was intended to be a shocking example: an underpayment of $6.50 could lead to a windfall penalty payment of $1,560, a 240-fold increase. Penalties for Violations of Wage Laws: Hearing on H.B. No. 2867 Before the S. Comm. on Rules & Redistricting, 2001 Leg., 71st Sess. Tape 111, A 343, at 52:48–53:10 (Or. June 11, 2001) (statements of J.L. Wilson). Here, plaintiff Mary Safaty seeks to collect a $2,880 penalty for $7.98 in unpaid wages, more than a 360-fold increase. (Judgment Following Jury Verdict (#185) 10.) Plaintiff Joey Law hopes for a $500 penalty for $1.10 in unpaid wages, more than a 450-fold increase. *Id.* at 5–6. In this light, any policy reasons to invent a notice-by-litigation provision are not compelling. *See Johnson v. Star Mach. Co.*, 530 P.2d 53, 57–58 (Or. 1974) (rejecting argument so at "variance with the apparent policy of the legislation as a whole as to bring about an unreasonable result"); *see also State v. Haydon*, 842 P.2d 410, 411 (Or. Ct. App. 1992) (same); *Sterling v. Klamath Forest Protective Ass'n*, 528 P.2d 574, 580 (Or. Ct. App. 1974) ("Legislation is to be construed so as to effectuate its declared legislative purpose.").

            **d.**      **House and Senate Discussions Also Belie the Litigation-As-Notice Theory**

Discussions at the legislature's committee hearings also make clear that litigation was never intended to serve as notice. One discussion in hearings before the Senate Committee on Rules and Redistricting concerned whether an employee would have to sue an employer to recover penalty wages *after* the employee gave written notice. Penalties for Violations of Wage Laws: Hearing on H.B. No. 2867 Before the S. Comm. on Rules & Redistricting, 2001 Leg., 71st Sess. Tape 110, B 019, at 59:02–59:34 (Or. 2001) (statements by David Nebel). Litigation was assumed to *follow* notice, not substitute for it.

Similar support is found in the House records. The notice requirement was originally drafted to require notice be sent by "certified or registered mail, return receipt requested." H.B. 2867, 71st Or. Leg. Assemb., Reg. Sess. (introduced Feb. 17, 2001). These specific mailing requirements were removed in the House to protect migrant workers who often have no return address. *See* Penalties for Violations of Wage Laws: Hearing on H.B. No. 2867 Before the H. Comm. on Bus., Labor & Consumer Affairs, 2001 Leg., 71st Sess. Tape 114, A 342, at 50:34–51:35 (Or. 2001) (statements by Rep. Jeff Merkley & J.L. Wilson). The discussions focused on how the notice would be mailed; there was no indication that notice would be given through a complaint or motion filed with a court. If penalty wages were to be awarded by a court, litigation would be a prerequisite, so there would be no need to discuss the particular form of the notice.

### e.    Violates Policy of Discouraging Litigation

Allowing litigation to serve as notice would also be at odds with the policy of discouraging litigation in wage and hour claims. *See Belknap v. U.S. Bank Nat'l Ass'n*, 234 P.3d 1041, 1046–48 (Or. Ct. App. 2010). Because I have recently discussed this policy at length in my opinion in this case on attorney fees, I refer the parties there for a more complete analysis. (Order (#217) 2–5.)

### f.    Conclusion

The theory that notice can be given by litigation is at odds with the text of the statute, the author's stated purpose, the central purpose of the wage and hour laws, the discussions in both the House and the Senate, and the policy of discouraging litigation in wage and hour claims.

Because the plaintiffs have not shown that they gave the defendants sufficient notice to determine who to pay and how much, penalty damages under Oregon Revised Statute § 652.150 are capped at 100 percent of the unpaid wages. *See* Or. Rev. Stat. § 652.150(2).

### B.    *No Minimum Wage Violation for Laurie Galteland*

The defendants next argue that the jury improperly awarded Laurie Galteland penalty wages for her claim of a minimum wage violation. Ms. Galteland's testimony on the stand is that she was paid the day after she told Ms. Lupenko about the underpayment, while still employed at Telelanguage. Neither the briefing, dispositive motions, or complaint make clear which statute Ms. Galteland relies on to establish penalty wages. Presuming that she relies on Oregon Revised Statute § 652.150, I deny her claim for penalty wages because she was paid for the underpayment while still employed. § 652.150 applies only to "any employee whose employment ceases," not to ongoing employment relationships. Or. Rev. Stat. § 652.150(1).

C.    *Inconsistent Awards*

The defendants argue that the jury awards should be reduced because they were inconsistent. (Def.'s Mem. in Supp. (#203) 10.) In light of my prior ruling capping penalty wages at 100 percent of unpaid wages, the prior inconsistencies are moot.

V.    **New Trial or Remittur**

Based on the arguments listed above, defense counsel asks for a new trial. In the alternative, they ask that I remit the damages as a condition to denying the motion for a new trial. (Def.'s Mem. in Supp. (#203) 11.)

"The court may . . . grant a new trial . . . after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1). "Historically recognized grounds include, but are not limited to, claims that the verdict is against the weight of the evidence, that the damages are excessive, or that, for other reasons, the trial was not fair to the party moving. We have held that the trial court may grant a new trial only if the verdict is contrary to the clear weight of the evidence, is based upon false or perjurious evidence, or to prevent a miscarriage of justice." *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 729 (9th Cir. 2007) (internal quotations and citations omitted).

Defense counsel leans on its arguments above to establish grounds for a new trial, in particular the argument that the penalty awards are inconsistent. I deny the defendants' motion for a new trial because the only meritorious arguments the defendants have presented are addressed above as matters of law.

## CONCLUSION

For the reasons above, I DENY Defendants' Renewed Motion for Judgment as a Matter of Law (#202) as to their claims (1) that breaks of 25–29 minutes are uncompensated lunch breaks, (2) that underpayments were de minimis, and (3) over whether there is a private right of action for being denied meal breaks. I GRANT Defendants' Renewed Motion for Judgment as a Matter of Law (#202) as to their claims that penalty wages are capped at 100 percent of unpaid wages and that Ms. Galteland was not entitled to penalty wages for her alleged minimum wage violation. I DENY AS MOOT the defendants' claim that penalty wages were inconsistently calculated. I DENY Defendants' Motion For A New Trial or Remittitur (#202).

The parties are ORDERED to submit a revised judgment correctly calculating the judgment award in light of this Opinion and Order.

IT IS SO ORDERED.

DATED this  31st  day of March, 2011.


/s/ Michael W. Mosman
MICHAEL W. MOSMAN
United States District Court