IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

**LAUREN ROTHER, KRYSTAL
COLEMAN, ALLA DANCU, JOSEPH
DRURY, JAMES JACKSON, RICKY
FULLER, LAURIE GALTELAND, YOUNG
EUN KIM, CATHY WELCH, MARY
SAFATY, MARGRETTA PFEFFER, GOYH
SAEPHANH, JONATHAN THOMAS
NICHOLS, TRISTA FLORES, MICQUAEL
WALKER, NAI SAECHAO, JOEY LAW,
DAVID PITTS, EVELYN GARFIELD,
TIMOTHY JONES, JENNIFER MANEJA,
SUSAN MATHENGE, AMANDA
MOFFITT, AKIRA OKAZAKI,
ANTONINA PRANTSEVICH, TONY
SENGMANYVONG; DANA
THOMPSON,**

|  |  |
|---|---|
| Plaintiffs, | No. 3:08-cv-00161-MO |
| v. | OPINION AND ORDER |

**LESLIE LUPENKO, ANDREI LUPENKO
and TELELANGUAGE INC., an Oregon
corporation,**

Defendants.

1 – OPINION AND ORDER

**MOSMAN, J.**,

This is a collective action under the Fair Labor Standards Act ("FLSA") and Oregon

wage and hour law.  In this opinion, I explain my ruling on Plaintiffs' Motion for Judgment

[298] and address Plaintiffs' Motion for Attorney Fees [304].  Plaintiffs' Motion for Attorney

Fees [304] is GRANTED in part.

## BACKGROUND

I. <u>**Procedural History**</u>

I recount the lengthy procedural history of this case only where relevant to my analysis.

Before trial, I granted summary judgment for the Defendants on Plaintiffs' minimum wage

claims based on late payment under the FLSA.  (Order [144].)  I granted summary judgment for

Plaintiffs on their late payment claims, with damages to be determined at trial.  *Id.*  All other

claims proceeded to trial.  During trial, I dismissed the claims of those Plaintiffs who failed,

without adequate explanation, to appear at trial to testify.  (Tr. [271] at 273:11–25.)  The jury

returned a verdict in favor of remaining Plaintiffs under both the FLSA and Oregon law, and

judgment was entered.  (Jury Verdict [181]; J. Following Jury Verdict [185].)  After trial, I

granted Defendants' motion for judgment as a matter of law as to the amount of penalty wages

allowable under Oregon law and entered an amended judgment in accordance with that ruling.

(Opinion and Order [218] at 6–13, 15; Final J. [238].)  This became the Court's final judgment

on all claims.

I awarded attorney fees to Plaintiffs under the FLSA in two separate orders.  First,

Plaintiffs were awarded $129,745.80 in attorney fees on August 1, 2011 [236].  On December

15, 2011, they were awarded supplemental attorney fees in the amount of $11,937.53 and costs in the amount of $128.60 [278].

The parties cross-appealed, and the Ninth Circuit affirmed in part and reversed in part. *Rother et al. v. Lupenko et al.*, 515 F. App'x 672, 677–78 (2013) (memorandum). On Defendants' appeal, the Ninth Circuit upheld the imposition of discovery sanctions against Defendants, affirmed the denial of Defendants' motion for summary judgment on the unpaid meal break claims, and upheld the award of attorney fees to Plaintiffs. *Id.* at 674–75. (Attorney fees based on Defendants' appeal are not at issue before this Court.)

On Plaintiffs' cross appeal, the Ninth Circuit affirmed this Court's grant of summary judgment for Defendants on the minimum wage claims brought under Oregon law, affirmed the exclusion from trial of wage and hour violations alleged for the first time after entry of summary judgment, and affirmed this Court's ruling on Defendants' motion for judgment as a matter of law on Oregon penalty wages and the consequent reduction of the verdict amount. *Id.* at 676–77. These claims are hereafter referred to as the "affirmed claims." The Ninth Circuit reversed this Court's rulings as to two categories of claims: first, the court reversed the grant of summary judgment for Defendants on the FLSA "late payment" claims, *id.* at 675; second, the court reversed this Court's dismissal of the claims brought by those plaintiffs who had not appeared at trial to testify. *Id.* at 676. Only these two categories of claims were remanded for trial, and hereafter they are referred to as the "remanded claims." *Id.* at 677.

Plaintiffs also appealed this Court's rulings on its previous requests for attorney fees. Plaintiffs contended that this court erred in holding that they were not entitled to attorney fees under Oregon law. *Id.* at 677. The Ninth Circuit affirmed, holding that this Court did not err in "concluding that Plaintiffs' prelitigation notice was deficient." *Id.* (*citing Belknap v. U.S. Bank*

*NA*, 235 Or. App. 658, 234 P.3d 1041 (2010) (prelitigation notice must include sufficient information to allow the defendant to evaluate the claim and seek promptly to settle it)). Plaintiffs also contended that this Court erred in reducing their fees based on their limited success.  *Id.*  The Ninth Circuit affirmed, concluding that it was not an abuse of discretion to "conclude[e] that Plaintiffs' reduction of some of the hours from the lodestar analysis did not yield a reasonable award under the circumstances."  *Id.*  The court noted that this affirmance would not preclude Plaintiffs from seeking a supplemental award of attorney fees, should they prevail on their remanded claims.  *Id.* at 677 n.2.

## II.    <u>Defendants' Rule 68 Offer of Judgment</u>

The Ninth Circuit's mandate [283] issued on July 9, 2013.  On August 9, 2013, Defendants tendered to Plaintiffs an offer of judgment under Federal Rule of Civil Procedure 68 ("Rule 68") in the amount of $12,500.00 as damages, "plus plaintiffs' reasonable and necessary legally recoverable costs, attorney's fees and expenses, to be determined by the Court."  (Decl. Egan [300] Ex. 4 at 3.)  On August 13, 2013, after seeking to clarify the scope of the offer (as is discussed below), Plaintiffs accepted the offer of judgment and filed notice of their acceptance [296] with this Court.

It appears that almost immediately after this filing the parties began to dispute what form of judgment would properly embody the Rule 68 offer that had been accepted.  After a flurry of correspondence to the Court from both sides, Plaintiffs filed a Motion for Judgment [298], asking that the court enter judgment in a form that would make clear that the judgment encompassed all claims, not only the remanded claims.  (Pl.'s Mem. re: Motion for J. [299].)  Defendants objected, arguing that this Court was without jurisdiction to enter judgment on the affirmed claims pursuant to the rule of mandate and the doctrine of law of the case.  I then entered the

Supplemental Judgment [303] against Defendants.  The Supplemental Judgment reflects the

terms of Defendants' Rule 68 offer, and provides as follows:

> SUPPLEMENTAL JUDGMENT IS HEREBY GRANTED against
> all Defendants in favor of all Plaintiffs, in the amount of TWELVE
> THOUSAND FIVE HUNDRED DOLLARS ($12,500.00) as
> damages, plus Plaintiffs' reasonable and necessary costs, attorneys
> fees and expenses in an amount to be determined by the Court.

(Supp. Jgmt. [303].)[1]

Plaintiffs now seek the costs and attorney fees contemplated by the terms of the Rule 68

offer.  On the theory that they were rendered prevailing parties on all claims pursuant to the

Supplemental Judgment [303], Plaintiffs seek "the award of fees previously sought but denied, as

well as supplemental fees incurred since Plaintiffs' previous fee petitions."  (Pl.'s Mem. Att'y

Fees [305] at I, 3–7.)

## LEGAL STANDARDS

"At least fourteen days before the date set for trial," a defendant may serve an opposing

party with an offer of judgment "on specified terms, with the costs then accrued."  Fed. R. Civ.

P. 68(a).  If this offer is accepted by written notice within fourteen days of service, the parties

may file notice of the offer and its acceptance, and "[t]he clerk must then enter judgment."  Fed.

R. Civ. P. 68(a).  If the offer is not accepted and the offeree's recovery "is not more favorable

than the unaccepted offer," then the offeree bears the risk of paying "the costs incurred after the

offer was made."  Fed. R. Civ. P. 68(d).

If the underlying law entitles the prevailing party to seek attorney fees, a Rule 68 offer

may include the amount for attorney fees (if this inclusion is expressly stated) or may

---

[1] I deleted the phrase "legally recoverable" from the original offer of judgment simply because it
is superfluous.  Plaintiffs are not entitled to attorney fees and expenses that cannot legally be recovered.

contemplate that the court will entertain requests for attorney fees after acceptance.  *See Nusom v. Comh Woodburn, Inc.*, 122 F.3d 830, 834 (9th Cir. 1997).  In this case, the offer explicitly contemplated a later determination of attorney fees.  Of course, an accepted Rule 68 offer always includes recovery of costs.  Fed. R. Civ. P. 68(a).

That a party accepts a Rule 68 offer and has judgment entered in its favor does not automatically entitle it to attorney fees.  *Sea Coast Foods, Inc. v. Lu-Mar Lobster & Shrimp, Inc.*, 260 F.3d 1054, 1059 (9th Cir. 2001).  "[T]he mere existence of an accepted offer does not establish a right to [attorney fees].  It permits the plaintiffs to seek to recover them."  *Id.* (citing *Nusom*, 122 F.3d at 835).  The court must determine whether the acceptance results in entitlement to attorney fees based on a careful review of the record, including all the claims in the case and the damages sought for each.  *Id.* at 1059–60.

## DISCUSSION

## I.   <u>Express Terms of the Rule 68 Offer</u>

Plaintiffs explain that they accepted the Rule 68 offer on the understanding that it encompassed all of the claims in the case, both those that had been remanded for trial by the Ninth Circuit and those on which this Court's judgments in favor of Defendants had been affirmed by the Ninth Circuit.  (Pl.'s Mem. re: Motion for Entry of J. [299] at 3–4.)  Before Plaintiffs accepted the Offer, Plaintiffs' counsel requested clarification of its scope by sending the following letter to defense counsel:

> Is the Offer of Judgment intended to cover all claims in the case (whether currently before the trial court, on appeal, or with potential for further appeal), or is it limited to only those claims that have already been remanded and are currently before the District Court?  My guess would be that your clients are attempting to resolve the entire case, but I'm not certain of that from reading the language of the actual offer.

(Decl. Egan [300] Ex. 5 at 2.)

Defense counsel responded as follows:

> [T]he Offer of Judgment is intended as resolution of all claims against Telelanguage, Inc., Andre Lupenko and Leslie Lupenko (i.e., the named defendants). If accepted, the only remaining issue to be resolved is the reasonable and necessary fees, costs and expenses, which would be determined by the Court.

*Id.* Ex. 6 at 1.

Courts are to "apply general principles of contract law to determine the meaning of [a Rule 68] agreement," and thus normal rules of contract interpretation apply. *Evon v. Law Offices of Sidney Mickell*, 688 F.3d 1015, 1022 (9th Cir. 2012). Ambiguities in an offer are construed against the offeror. *See Nusom*, 122 F.3d at 833.

I find that Defendants' offer of judgment, according to its terms once clarified, would include *all claims*—not only those that had been remanded. Plaintiffs' counsel's letter made the nature of the question quite clear, unequivocally raising the prospect that the offer as originally written had been read to potentially include claims "on appeal, or with potential for further appeal." (Decl. Egan. [300] Ex. 5 at 2.) As a response to that clarifying question, Defense counsel's explanation made explicit that the offer would include "all" claims. On its face, the offer as clarified included all claims—including the affirmed claims—and contemplated that judgment would be entered against Defendants on all.

Were I interpreting a private contract, I would conclude that the offeree is entitled to judgment in his favor on the affirmed claims under the terms of the offer. A Rule 68 offer of judgment, however, is not such a private contract; while private parties may order their affairs as they please when contracting, they cannot contract around the validity and finality of the courts' judgments. *See Webb v. James*, 147 F.3d 617, 621 (7th Cir. 1998) (discussing the differences

between Rule 68 offers of judgment and ordinary contract principles); *Shorter v. Valley Bank & Trust Co.*, 678 F. Supp. 714, 719 (N.D. Ill. 1988) (recognizing that a Rule 68 offer of judgment is not "a simple contract"). While litigants may create settlement contracts from whole cloth, they take the rules of procedure as they find them.[2] Whether the Court could effectuate Defendants' offer of judgment as to the affirmed claims depends therefore upon interpretation of Rule 68 and its relationship to the doctrines governing judgments. *See Marek v. Chesny*, 473 U.S. 1, 6 (1985) (reasoning that "the [Rule 68] drafters' concern was not so much with the particular components of offers, but with the *judgments* to be allowed against defendants") (emphasis in original).

## II.    <u>Authority to Enter Judgment Pursuant to Rule 68</u>

To this Court's knowledge the impact of a Rule 68 acceptance under the procedural circumstances present here has not been addressed by any court. The parties have not brought to my attention any case in which a federal court was faced with this issue, and further research has not revealed such a case. I therefore address the effect of a Rule 68 acceptance on claims already resolved in favor of the offeror by the district court and then affirmed on appeal as a question of first impression.

### A.    *Meaning of "Final Judgment"*

Before turning to the interpretation of Rule 68, it is necessary to provide a word of clarification on the meaning of "final judgment" as discussed in this opinion. Plaintiffs argue that because there was still the opportunity for further appeal of the affirmed claims, the Ninth Circuit's judgment was not truly a "final judgment" and can be altered by entry of judgment under Rule 68(a). (Pl.'s Mem. re: Mot. for J. [299] at 6–8.) Defendants contend that the Ninth

---

[2] For discussion of significant differences between Rule 68 offers of judgment and private settlement contracts, *see* Channing J. Turner, Comment, *Too Late to Stipulate: Reconciling Rule 68 with Summary Judgments*, 81 U. Chi. L. Rev. 361, 377–78, 380 (2014).

Circuit's judgment became final upon issuance of the mandate, and thus it was a "final judgment" not subject to change by this Court.  (Def.'s Resp. re: Mot. for J. [301] at 4–6.)

The parties' contrary positions stem from their respective applications of two different uses of the term "final judgment."  As the Supreme Court has explained, "[f]inality is variously defined; like many legal terms, its precise meaning depends on context."  *Clay v. United States*, 537 U.S. 522, 527 (2003).  It is true that for many purposes a judgment is not considered "final" until all opportunities for appeal have run out.  For instance, the applicability of an intervening change in the law may depend upon whether the change takes place while the case is on "direct review" or after the case becomes "final" because no further appeal is possible.  *Bradley v. Sch. Bd. of City of Richmond*, 416 U.S. 696, 710–11 & n.14 (1974) (quoting *Linkletter v. Walker*, 381 U.S. 618, 622 n.5 (1965)) (noting that a case becomes "final" when "'the availability of appeal' has been exhausted or has lapsed, and the time to petition for certiorari has passed").  It is hard to see how the availability of appeal could affect the meaning of a Rule 68 offer of judgment.

Defendants use the term "final judgment" in a more specific sense.  For example, Congress has granted appellate jurisdiction to the courts of appeals from "all final decisions" of, *inter alia*, the District Courts.  28 U.S.C. § 1291; *see Bankers Trust Co. v. Mallis*, 435 U.S. 381, 384 n.4 (1978) (observing that "[a] 'judgment' for purposes of the Federal Rules of Civil Procedure would appear to be equivalent to a 'final decision' as that term is used in 28 U.S.C. § 1291").  Similarly, Federal Rule of Civil Procedure 60(b) refers to "final judgment."  It is in this sense that the Supreme Court has said that a decision is final and appealable when it "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment."  *Catlin v. United States*, 324 U.S. 229, 233 (1945).  A district court's ruling becomes "final" in this specific sense upon the entry of judgment pursuant to Federal Rules of Civil Procedure 58

and 79(a).  The final judgment entered on a claim at the close of the district court case remains

the final judgment on that claim unless reversed on appeal.  In this opinion, unless otherwise

specified the term "final judgment" is used in this specific sense to refer to a judgment that has

"end[ed] the litigation on the merits."  *Id.*

### B.    *Prior Decisions Addressing the Effect of Rule 68 Acceptance and Judgments*

Helpfully, the problem caused by the interaction between Rule 68 offers and a court's

judgments has been addressed by several courts in the context of summary judgment under

Federal Rule of Civil Procedure 56.  The reasoning of these courts sheds light on the particular

problem before me today.

Several federal courts have addressed the effect of a Rule 68 acceptance on previously

entered judgments at the district court level.  In *Perkins v. U S W. Commc'ns*, 138 F.3d 336 (8th

Cir. 1998), the Eighth Circuit upheld the entry of judgment for the plaintiff under Rule 68 where

the defendant's Rule 68 offer overlapped with the district court's ruling on its motion for

summary judgment.  The defendant had moved for summary judgment on November 19, 1996.

*Perkins*, 138 F.3d at 337.  The motion remained pending before the district court on March 18,

1997, at which point the defendant made a Rule 68 offer of judgment to the plaintiff.  Under the

then-applicable version of Rule 68, the plaintiff had ten days to accept the offer. [3]  *Id.*  On March

20, 1997—coincidentally just two days after the Rule 68 offer had been tendered to the

plaintiff—the district court granted the defendant's motion for summary judgment and dismissed

the case.  *Id.*  The plaintiff sent a notice of acceptance of the Rule 68 offer to defense counsel the

next day and then to the district court several days later.  *Id.* at 337–38.  On the plaintiff's motion

---

[3] Rule 68 now provides that an offer of judgment remains open for fourteen days.  Fed. R. Civ. P.
68(a).

under Federal Rule of Civil Procedure 59(e), the district court amended its earlier final judgment

pursuant to the Rule 68 offer of judgment, rendering final judgment in favor of the plaintiff

instead of in favor of defendant U S West.  *Id.* at 338.  U S West appealed, arguing that the

district court "erred in holding that a Rule 68 offer of judgment remains valid for the statutorily

prescribed . . . period despite an intervening entry of summary judgment in favor of the party

making the offer of judgment."  *Id.*

      The Eighth Circuit affirmed the district court's decision to amend the judgment,

reasoning as follows:

> [T]he plain language of Rule 68 mandates that an offer of
> judgment remain valid and open for acceptance for the full ten-day
> period outlined in the Rule despite an intervening grant of
> summary judgment by the district court. . . . U S West made a
> strategic decision to make an offer of judgment under Rule 68.
> Because the offer was not conditioned upon the District Court's
> not granting U S West's motion for summary judgment prior to
> Perkins's acceptance of the offer, U S West assumed the risk that
> the District Court would rule favorably on [its] summary judgment
> motion during the ten-day period for acceptance of its Rule 68
> offer.

*Id.* at 339.  The Eighth Circuit therefore concluded that a Rule 68 acceptance may provide

grounds to amend the district court's final judgment.

      Two district courts have also had occasion to consider whether a Rule 68 offer may be

accepted after the entry of final judgment.  In *Day v. Krystal Company*, 241 F.R.D. 474 (E.D.

Tenn. 2007), the court concluded that a Rule 68 offer could *not* override the final judgment that

had been entered after a grant of summary judgment.  In that case, the court had granted

summary judgment for the defendants on all claims, and final judgment had been entered.  *Id.* at

475.  The plaintiff then attempted to accept a still-pending Rule 68 offer, moving to set aside the

final judgment under FRCP 59(e).  *Id.* at 475–76.  The court disagreed with the Eighth Circuit,

reasoning as follows:

>        Under the normal application of Rule 68, entry of a Rule 68
> judgment is ministerial rather than discretionary, meaning a district
> court has no discretion to do anything but to enter judgment once
> an offer has been accepted.  However, when a plaintiff attempts to
> accept the offer under circumstances not contemplated by the rule,
> the mandatory nature of the rule is absolved . . .. [T]here is nothing
> in the plain language or history of Rule 68 to suggest a plaintiff
> can override a final judgment by accepting an offer of judgment.
> . . . Since a judgment was entered disposing of the case in its
> entirety, the judgment was final for all purposes, including appeal.
> Once a final judgment has been entered and the case is closed, any
> attempt to settle the case is then futile.

*Id.* at 478.[4]  The court concluded that the plaintiff "no longer had the power to accept

Defendant's Rule 68 offer of judgment" and denied the motion to amend.  *Id.*

      In *Smith v. Southeastern Penn. Transp. Auth.*, 258 F.R.D. 300 (E.D. Penn. 2009), the

court granted summary judgment for the defendant and entered a final judgment, whereupon the

---

      [4] As suggested by the quoted language, the *Day* court's reasoning relies heavily upon the
promotion of settlement as the rationale behind Rule 68.  Indeed, the Supreme Court has explained that
"[t]he purpose of Rule 68 is to encourage the settlement of litigation."  *Delta Air Lines, Inc. v. August*,
450 U.S. 346, 352 (1981).  The *Delta Air Lines* Court explained that Rule 68 provides a particular
"inducement to settle in those cases in which there is a strong probability that the plaintiff will obtain a
judgment but the amount of recovery is uncertain."  *Id.*  The *Day* court reasoned that—like Rule 68—
summary judgment is designed to permit the early and efficient resolution of disputes: "when the Court
enter[s] a final judgment in favor of Defendant [pursuant to a grant of summary judgment], the Court
end[s] the litigation, and the need for settlement [i]s no longer present."  241 F.R.D. at 478.
      One commentator has argued that Rule 68 is best understood as a solution to the problem of a
plaintiff who refuses to settle for judgment in its favor and insists on going to trial even though liability is
clear and the amount of damages is fairly certain.  Robert G. Bone, *"To Encourage Settlement": Rule 68,
Offers of Judgment, and the History of the Federal Rules of Civil Procedure*, 102 Nw. U. L. Rev. 1561,
1572–76 (2008).  The author discusses the history of the rule, explaining that it evolved from the common
law right of tender in actions for debt or indebitatus assumpsit.  *Id.* at 1583–85.  If a defendant made
tender to the plaintiff but the plaintiff refused to accept the amount tendered, insisting on trying the case
in an attempt to recover more than defendant agreed was owed, then the plaintiff would be responsible for
the costs of litigating the case if he failed to recover more than the tendered amount.  *Id.*  This rule was
expanded to other causes of action as an "offer of judgment" in several states' codes, whereupon Rule 68
was adopted in the first version of the Federal Rules of Civil Procedure in 1938.  *Id.* at 1577, 1585–89.

plaintiff filed its notice of acceptance.  258 F.R.D. at 301.  The clerk of court entered judgment

in favor of the plaintiff under Rule 68(a).  *Id.*  Defendants moved for relief from the clerk's

judgment under Rule 60(b)—the court granted the motion, disapproving of the plaintiff's attempt

"to override our considered judgment through a ministerial act of the Clerk of Court" by

accepting a Rule 68 offer after the entry of final judgment.  *Id.* at 302.

### C.    *Rule 68 When a Final Judgment Already Exists*

Although courts are not in agreement as to whether acceptance of a Rule 68 offer

warrants amendment of or relief from final judgment,[5] all are in agreement that the Rule 68

---

[5] The effect of an interlocutory summary judgment ruling that overlaps with a Rule 68 offer has also been raised in case law.  The Tenth Circuit recently approved a district court's decision to recognize the validity of an offer of judgment under Oklahoma's analog to Rule 68, Okla. Stat. tit. 12, § 1101.1, even though partial summary judgment had been granted for the defendant before the offer of judgment was made.  *Potter v. Synerlink Corp.*, 562 F. App'x 665 (10th Cir. 2014) (unpublished).  The district court had granted summary judgment for the defendants on the plaintiff's federal employment discrimination claims, granted summary judgment for the plaintiff on a state law claim for unpaid vacation pay, and allowed a state law claim for unpaid commissions to proceed to trial.  *Id.* at *5–6.  After the partial summary judgment ruling, defendant made an offer of judgment for $120,000 under § 1101.1; the offer was not accepted.  *Id.* at *14.  At trial on the unpaid commissions claim, the jury found for the plaintiff and awarded approximately $47,000 in damages.  *Id.* at *5–6.  When the plaintiff sought attorney fees after trial, defendant sought an offset based on the offer of judgment because it was greater than plaintiff's recovery.  *Id.* at *15.  Plaintiff thus argued that the offer was invalid, so her declination to accept it could not be used to offset her recovery of attorney fees.  *Id.*  One of the grounds of invalidity she raised was that the defendant "could not offer to settle the [ ] discrimination claims the district court [had already] resolved by granting summary judgment."  *Id.*  The district court held that the offer of judgment was valid and thus allowed the defendant an offset against the award of attorney fees.  *Id.*  The Tenth Circuit approved the district court's conclusion, although it did not reach the offset issue.  *Id.* at 15 & n.21.  The Tenth Circuit emphasized the interlocutory nature of summary judgment, concluding that "the district court could revisit [its interlocutory summary judgment ruling] at any time."  *Id.* at *15 n.21.
 Another district court, however, has concluded that judgment cannot be entered pursuant to a Rule 68 acceptance against a defendant for whom summary judgment had been granted even though no final judgment had been entered (because some claims survived as to other defendants).  *Sershen v. Cholish*, No. 07-1011, 2010 WL 1626930, *2 (M.D. Penn. April 20, 2010).  This decision indicates that the interlocutory nature of summary judgment is not universally regarded as pertinent to the validity of an overlapping Rule 68 offer.
 I need not resolve the question posed by the overlap of a Rule 68 offer with summary judgment where no final judgment has been entered.  However, I find convincing the Tenth Circuit's suggestion that Rule 68 may have greater strength vis-à-vis an interlocutory order than a final judgment.  District courts have the inherent authority to modify their own interlocutory orders in the interests of justice so

acceptance itself cannot automatically override the existing final judgment on the terms contemplated by Rule 68(a).   The Eighth Circuit gave effect to a Rule 68 acceptance pursuant to a motion to amend the judgment brought under Federal Rule of Civil Procedure 59(e).   *See Perkins*, 138 F.3d at 338–40.   This same procedure was used by the plaintiffs in *Day*, although in that case the court denied the motion to amend—the *Day* court concluded that the plaintiff's acceptance of the Rule 68 offer was "not a ground by which a Rule 59(e) motion to alter or amend judgment may be granted."   *Day*, 241 F.R.D. at 476, 478.   When the clerk of court did automatically enter a judgment in *Smith*, the court concluded that a "ministerial act of the Clerk of Court" cannot override the court's "considered judgment."   *Smith*, 258 F.R.D. at 302.

Had the remanded claims been the only claims in this case, it is not disputed that the clerk could have entered judgment as directed by Rule 68(a).   The remanded claims were not subject to a final judgment because as to them this Court's final judgment had been reversed on appeal.   At core, the issue is therefore whether Rule 68 allows the clerk to enter a judgment pursuant to Rule 68(a) encompassing claims on which a final judgment already exists.   I hold that where there exists a final judgment as to any claim a Rule 68 offer encompassing that claim cannot take effect as contemplated by Rule 68(a), and therefore falls outside the purview of the Rule.

The entry of judgment pursuant to Rule 68(a) has been described as "ministerial rather than discretionary."   *Mallory v. Eyrich*, 922 F.2d 1273, 1278–79 (6th Cir. 1991).   Like the *Smith*

---

long as they retain jurisdiction over the case. *See John Simmons Co. v. Grier Bros. Co.*, 258 U.S. 82, 88–89 (1922) (discussing the distinction between interlocutory and final decrees); *United States v. Jerry*, 487 F.2d 600, 605 (3d Cir. 1973) (recognizing that "so long as the district court has jurisdiction over the case, it possesses inherent power over interlocutory orders, and can reconsider them when it is consonant with justice to do so"); *U.S. v. Iron Mountain Mines, Inc.*, 812 F. Supp. 1528, 1555–56 (E.D. Cal. 1992) (recognizing that parties may "appeal to the court's plenary power to grant relief from an interlocutory order if the interests of justice so require").   Once final judgment is entered, however, "the judgment [i]s final for all purposes, including appeal." *Day*, 241 F.R.D. at 478.

court, I conclude that a "ministerial act of the Clerk of Court" cannot override an existing final

judgment. *Smith*, 258 F.R.D. at 302. While the clerk is granted authority to enter judgments

under specified circumstances, *cf.* Fed. R. Civ. P. 58(b)(1), the clerk is not empowered to amend

or override final judgments already entered by the court (whether or not affirmed by the court of

appeals). Thus, the clerk could not comply with Rule 68(a) as to claims on which a final

judgment already existed. Only as to the remanded claims could the clerk have ministerially

entered judgment pursuant to the Rule 68 acceptance.

Furthermore, under Rule 68 an offer of judgment must be made "[a]t least 14 days before

the date set for trial."[6] Plainly, the rule contemplates that a trial (or other disposition on the

merits) is expected to follow an unaccepted Rule 68 offer. *See Simon v. Intercont. Transp. (ICT)

B.V.*, 882 F.2d 1435, 1439 (9th Cir. 1989) (explaining that "if the adverse party rejects the offer

and fails after trial to obtain a judgment more favorable than the offer, Rule 68 requires that party

to pay the costs incurred in litigating the case from the making of the offer").

Plaintiffs argue that even if the claims must be "proceeding to trial" in order to be the

subject of a Rule 68 offer, the affirmed claims qualify: they could still have gone to trial in the

future because there was still opportunity for further appeal. (Mem. re: Mot. for Entry of J. [299]

at 6–7.) Had Plaintiffs filed a successful petition for certiorari and obtained a remand from the

Supreme Court, then the affirmed claims would indeed "proceed[ ] to trial." *Id.* It is true that

_____

[6] Courts have consistently allowed Rule 68 offers to be tendered even if no trial date has yet been
set. I will not depart from settled practice on this point. To disallow Rule 68 offers until the litigation
proceeds far enough the court to set a trial date would result in a defendant's ability to make an offer of
judgment depending on whether the court's docket is up to date, rather than on circumstances within the
control of the parties. The Supreme Court has recognized that the primary purpose of Rule 68 is "to
encourage the settlement of litigation," *Delta Air Lines*, 450 U.S. at 352, and settlement is not promoted
by disallowing use of the Rule 68 mechanism due to circumstances outside the parties' control. So long
as the offer is tendered at least fourteen days before any trial date set, the offer is treated as timely.

until a judgment is "final" in the broad sense there is still some possibility that claims may be remanded for trial. However, until the existing final judgment ceases to have effect, whether by reversal or vacation, it cannot be said that a dismissed claim is headed for trial. Although the remanded claims were put back into the time period contemplated by Rule 68—the time "before the date set for trial"—the same is not true of the affirmed claims. Therefore, for this reason too I conclude that Rule 68 cannot operate as to claims on which a final judgment already exists.

As discussed above, I conclude that Rule 68 cannot by its terms allow for entry of judgment on claims on which a final judgment already exists. Similarly, it does not apply automatically to claims not then "proceeding to trial" under the plain text of Rule 68. Therefore, the Supplemental Judgment [303] is the effective judgment on the remanded claims, but the Final Judgment [238] remains effective as to all other claims, including the affirmed claims.

## III.    <u>Means of Accepting a Rule 68 Offer on Claims Already Finally Adjudged</u>

I have considered whether in a situation such as this an offeree may still have a means of accepting the offer by seeking amendment of or relief from the existing final judgment. Entertaining motions for relief from judgment where a Rule 68 offer purports to include claims already resolved to final judgment encourages settlement by allowing a defendant to attempt to settle an entire case, notwithstanding that some claims have already been resolved. *See Delta Air Lines*, 450 U.S. at 352. It is well settled that parties may compromise or settle their claims after judgment is entered in order to foreclose appeal. *See, e.g., Jones v. McDaniel*, 717 F.3d 1062, 1069 (9th Cir. 2013); *Key Enterprises of Delaware, Inc. v. Venice Hosp.*, 9 F.3d 893, 898–99 (11th Cir. 1993). As discussed above, this is what the plain text of Defendants' Rule 68 offer attempts to do: resolve "all claims" and end the case.

As noted, in *Perkins* the Rule 68 acceptance was given effect pursuant to a motion to amend the judgment under Rule 59(e).  138 F.3d at 340.  The district court has discretion to amend a judgment under Rule 59(e), subject to the competing interests in the finality of judgments and the "need to render just decisions on the basis of all the facts."  *Edward H. Bohlin Co., Inc. v. Banning Co., Inc.*, 6 F.3d 350, 355 (5th Cir. 1993); *see* Wright & Miller, 11 *Federal Practice and Procedure* § 2810.1.  As discussed above, in *Perkins* the Eighth Circuit reasoned that the Rule 68 offer remained open by its terms at the time the original  judgment was entered, and thus the offeror—having assumed the risk of an overlap with its summary judgment motion—could not be heard to complain when the judgment was amended to reflect the offer's terms.  *See Perkins*, 138 F.3d at 339.  In affirming, the Eighth Circuit recognized that the district court had the authority to alter its own final judgment under Rule 59(e) under the appropriate circumstances.

The *Day* court, however, denied the plaintiff's Rule 59(e) motion, reasoning that "there is nothing in the plain language or history of Rule 68 to suggest a plaintiff can override a final judgment by accepting an offer of judgment."  241 F.R.D. at 478.  The *Day* court concluded that because the underlying purpose of Rule 68 is to encourage settlement, and settlement is no longer necessary once a final judgment has been entered, the acceptance of the offer was not grounds for amendment of the judgment.  *Id.*  As noted above, however, parties may still have incentive to settle claims after entry of the district court's final judgment in order to foreclose appeal.  I therefore find the *Day* court's reasoning unconvincing.

Although a Rule 59(e) motion would not be timely in this case, Federal Rule of Civil Procedure 60(b) allows a party to move for relief from a final judgment.  I conclude that a Rule 60(b) motion for relief from judgment may be entertained on the basis of a post-judgment Rule

68 offer.[7]  Plaintiffs, however, have never sought relief from judgment under Rule 60(b).

Instead, they argue that their acceptance of the Rule 68 offer—which by its terms would include

the affirmed claims—automatically results in judgment in their favor.  In fact, they contend that

there "was no final judgment"[8] and that even the existence of a final judgment "would not

prevent the compromise or settlement of [the affirmed] claims through Rule 68."  (Mem. re: Mot.

for J. [299] at 6.)  In short, they do not ask me to grant relief from judgment, but insist that their

acceptance of the offer is enough, on its own, to encompass all claims in the case (and therefore

to render them prevailing parties on all claims).  For the reasons explained above, Rule 68 itself

precludes this result.  It is not within the clerk's power to override the court's final judgment, as

---

[7] Defendants argue that the rule of mandate deprives this Court of jurisdiction to reconsider or alter any claim not remanded by the Ninth Circuit.  (Def.'s Resp. [356] at 4–5.)  It is true that [w]hen a case has been once decided by [the court of appeals] and remanded to the [district court]," the rulings of the court of appeals are "considered as finally settled."  *United States v. Thrasher*, 483 F.3d 977, 981 (9th Cir. 2007) (internal quotation omitted).  Moreover, the rule of mandate is jurisdictional—Defendants contend that this means that the district court lacks jurisdiction to alter any claims not remanded.  (Def.'s Resp. [356] at 5–6.)  Defendants further argue that the doctrine of law of the case similarly bars this court from reconsidering the judgments of the Ninth Circuit.  *Id.*  Under the doctrine of law of the case, a court is "generally precluded from reconsidering an issue previously decided by the same court, or a higher court in the identical case."  *Thrasher*, 483 F.3d at 981 (internal quotation omitted).  The doctrine applies to issues decided "explicitly or by necessary implication."  *Id.* (internal quotation omitted).

Certainly the rule of mandate and the doctrine of law of the case would bar this court from substantively reviewing or reconsidering judgments decided or affirmed by the Ninth Circuit.  For instance, as discussed *supra* I shall not reconsider whether Plaintiffs had failed to provide written notice of nonpayment such that penalty wages are capped at 100 percent of unpaid wages under Oregon law.  This issue has been the subject of a final judgment that was affirmed by the Ninth Circuit.  *See Rother v. Lupenko*, 515 F. App'x at 677.  Under these circumstances, relief from judgment would not allow reconsideration of substantive legal issues that are law of the case.

However, the Supreme Court has explained that "[l]ike the original district court judgment, the appellate mandate relates to the record and issues then before the court, and does not purport to deal with possible later events."  *Standard Oil Co. of Cal. v. United States*, 429 U.S. 18–19 (1976).  Thus, under appropriate circumstances a Rule 60(b) motion may be filed as to the district court's judgments even where they have been affirmed on appeal.  *See id.*  This was the case in *Schmitt v. Am. Family Mut. Ins. Co.*, 187 F.R.D. 568 (S.D. Ind. 1999), a case cited by Plaintiffs.  I therefore conclude that the rule of mandate and the doctrine of law of the case do not provide a categorical bar to granting relief from judgment pursuant to a Rule 68 offer.

[8] In this argument, Plaintiffs rely on "finality" as used in the broader sense discussed above and not relevant here.

would be required by Rule 68(a), and Rule 68 does not apply to claims not in the pretrial stage. As such, I conclude that the Motion for Judgment [298] does not seek relief from judgment under Rule 60(b).

## IV.    Relief from Judgment

Even if I were to construe Plaintiffs' Motion for Entry of Judgment [298] to seek relief under Rule 60(b), I would deny relief from judgment for the reasons explained below. Rule 60(b) allows relief from a final judgment under five circumstances, only one of which is potentially applicable here.[9] Plaintiffs' Motion [298] could be construed as having been brought under Rule 60(b)(6), which allows relief under "any other circumstances justifying relief." Relief under this provision may be granted to "accomplish justice," but it requires a showing of

---

[9] I have considered whether relief could be sought under Rule 60(b)(5), which allows relief where the judgment "has been satisfied, released or discharged." This clause "is generally invoked when a party seeks entry of satisfaction of judgment because no acknowledgment of satisfaction has been delivered due to an ongoing dispute over the judgment amount." *Zamani v. Carnes*, 491 F.3d 990, 995 (9th Cir. 2007). This is plainly not the circumstance here. Instead, Plaintiffs argument is that the Court should give full effect to the terms of Defendants' Rule 68 offer as a settlement, explaining that all parties "chose to give up their ability to appeal[ ] in favor of finality" and arguing that Defendants are thus estopped from denying the effect of their offer by Plaintiffs' reliance on the clarification. (Pl.'s Reply [373] at 3–4.)

Relief from judgment under rule 60(b)(5) may also be used where settlement effects the previously entered judgment. For instance, such a motion has been granted where a defendant "[sought a] credit against all or part of a judgment for the amount paid by a settling co-defendant." *BUC Int'l Corp. v. Int'l Yacht Council Ltd.*, 517 F.3d 1271, 1274 (11th Cir. 2008); *see also Snowden v. D. C. Transit System, Inc.*, 454 F.2d 1047, 1048 (D.C. Cir. 1971). Such circumstances are also not present here. No satisfaction of the existing judgment was effected by the offer and acceptance under Rule 68—that judgment had been in Defendants' favor, and thus they had no obligation under it. There can be no "release" on which Plaintiffs' motion could be based. "Release" is defined as "liberation from an obligation, duty or demand; the act of giving up a right or claim to the person against whom it could have been enforced." Black's Law Dictionary 1480 (10th ed. 2014). The judgments at issue were in favor of Defendants, and thus imposed no "obligations or duties" on them. A judgment dismissing a claim does not result in any obligation or duty *on the defendant* from which the plaintiff could release them pursuant to a settlement or consent judgment. Thus, Plaintiffs could not successfully argue that the Rule 68 acceptance resulted in a release. Finally, the other two grounds for a motion under Rule 60(b)(5) clearly have no application to this case, as the existing judgment has not been "reversed or vacated" and there is no argument that "applying it prospectively is no longer equitable" (a provision applicable to injunctive relief, not the money damages at issue in this case).

"extraordinary circumstances." *Liljeberg v. Health Serv. Acquisition Corp.*, 486 U.S. 847, 863–64 (1988) (internal quotation omitted); *see also Ackermann v. United States*, 340 U.S. 193, 199 (1950); *United States v. Alpine Land & Reservoir Co.*, 984 F.2d 1047, 1049 (9th Cir. 1993); *Merit Ins. Co. v. Leatherby Ins. Co.*, 714 F.2d 673, 682–83 (7th Cir. 1983); *Stradley v. Cortez*, 518 F.2d 488, 493 (3d Cir. 1975). Rule 60(b)(6) is "applied sparingly as an equitable remedy to prevent manifest injustice." *Alpine Land & Reservoir Co.*, 984 F.2d at 1049.

Relief from judgment under Rule 60(b)(6) "normally will not be granted unless the moving party is able to show both [an "erroneous judgment" causing] injury and that circumstances beyond its control prevented timely action to protect its interests." *Id*. In fixing the boundaries of relief from judgment under Rule 60(b)(6), courts give particular regard to the "social interest in the finality of litigation." *Merit Ins. Co.*, 714 F.2d at 682.

Here, the issue is not whether Plaintiffs timely sought relief—were I to construe the Motion for Judgment [298] to seek relief under Rule 60(b)(6), it would have been filed hard on the heels of the Rule 68 acceptance that first created the circumstances justifying the request for relief. The issue is that it cannot be said that the existing final judgments on the affirmed claims are "erroneous" in the sense contemplated by precedent. No error of the district court or the Ninth Circuit is (or can be) alleged, and there is no challenge to the merit of the existing final judgment on the affirmed claims. As explained above, the Rule 68 offer could not properly include claims not remanded for trial. Plaintiffs' attempted acceptance of a Rule 68 offer contemplating judgment on the affirmed claims is not the type of "extraordinary circumstances" justifying relief under Rule 60(b)(6). Whether Defendants might be estopped from denying the inclusion of all claims is of no moment to the validity of this Court's judgments. I would therefore deny the motion.

## V.    **Award of Attorney Fees**

Plaintiffs seek attorney fees and costs associated with the remanded claims, with the affirmed claims, and with fee petitions previously denied because they had not obtained complete success on the merits.  (Pl.'s Mot. for Att'y Fees [304].)  They argue that fees are available under both the FLSA and Oregon law.  It is law of the case that Ms. Rother unreasonably failed to give adequate written notice of the wage claims to Defendants.  *Rother.*, 515 F. App'x at 677.  I decline Plaintiffs' invitation to revisit this issue in light of additional evidence—the issue has been decided by this Court and was affirmed by the Ninth Circuit, and is law of the case.  There is no reason Plaintiffs could not have introduced the evidence now relied upon during the earlier proceedings, as all of the events occurred in 2008 and the demand letters were written by Mr. Egan, and therefore should have been in counsel's possession all along. (*See* Decl. Egan [306] ¶ 2–5.)  Therefore, Plaintiffs are not entitled to fees under Oregon law.[10] However, the FLSA grants mandatory attorney fees, and thus attorney fees are available under that statute for the remanded FLSA minimum wage claims based on late payment.  29 U.S.C. § 216(b).  For the same reasons, Plaintiffs are entitled to fees incurred in pursuing the non-testifying Plaintiffs' claims insofar as they arose under the FLSA (but not under Oregon law).

The court is responsible for determining the reasonableness of a plaintiff's fee petition. *See Gates v. Deukmejian*, 987 F.2d 1392, 1400–01 (9th Cir. 1992).  It is the fee claimant's

---

[10] Even if I were to reconsider this ruling, I would still conclude that there was inadequate notice. Defendants were not required to provide detailed hourly pay records prior to litigation, and Plaintiffs are not exempted from the statutory notice requirement due to Defendants' failure to comply with a nonexistent obligation.  The purpose of prelitigation notice is quick and early settlement of any claims, *see Belknap*, 235 Or. App. at 672, 234 P.3d at 1048, and Ms. Rother's notice did not provide Defendants with sufficient information to allow them to consider settlement.  A plaintiff is not entitled to extract a multi-claim settlement based on one vaguely identified wage and hour claim and the possibility that counsel may be able to glean additional wage and hour claims from the pay records demanded.

burden to demonstrate that the number of hours spent was reasonably necessary to the litigation and that counsel made "a good faith effort to exclude from [the] fee request hours that are excessive, redundant, or otherwise unnecessary." *Hensley v. Eckerhart*, 461 U.S. 424, 433–34 (1983); *see also Frank Music Corp. v. Metro-Goldwyn-Mayer Inc.*, 886 F.2d 1545, 1557 (9th Cir. 1989). The burden is on the fee claimant to submit documentation supporting the hours worked on the matter. *See Hensley*, 461 U.S. 433. The court should exclude from the fee award any "hours that are excessive, redundant, or otherwise unnecessary." *McCown v. City of Fontana*, 565 F.3d 1097, 1102 (9th Cir. 2008).

### A.    *Supplemental Fees*

Plaintiffs seek to recover a significant amount of fees that was previously denied due to their then-incomplete success on the merits. They seek $80,278.8 for attorney fees and $5,219 paralegal fees that I deducted in my August 1, 2011 Order [236] based in part on their limited success. (Pl.'s Mot. for Att'y Fees [ ] at 3–4.) They also seek a total of $63,086.15 for hours related to then-unsuccessful Plaintiffs and claims that were voluntarily deducted at that time. *Id.* They also seek a total of $7,305.97 for hours excluded in part due to their incomplete success at the time of my December 15, 2011 Order [278].

Plaintiffs are not prevailing parties on any claims other than those remanded. I find that the reasons that justified denying these fees when they were first sought remain applicable. Although Plaintiffs are now prevailing parties to a slightly larger extent than they were in 2011 time—by virtue of accepted Rule 68 offer as to the remanded claims—the *Kerr* factors explained at the time of my initial order continue to justify the reductions. "The fact that a plaintiff has received judgment pursuant to a Rule 68 offer does not mean that the plaintiff has prevailed in the sense that he entitled to attorneys' fees." *Sea Coast Foods*, 260 F.3d at 1059. Having

accepted a judgment in the amount of $12,500 on the remanded claims, Plaintiffs cannot be said to have achieved substantial success on the merits.  I therefore DENY the request for fees previously denied.

> ### B.       *Fees Incurred Appealing the Affirmed Claims*

Plaintiffs seek compensation for 513.9 hours of counsel's time and 0.2 hours of paralegal time in connection with the affirmed claims, arguing that because the Rule 68 offer rendered them the prevailing parties on all claims, such fees are recoverable.  They seek a total of $156,764.50 for these hours.  (Decl. Egan [306] Ex. 6 at 16.)

For the reasons explained above, Plaintiffs are not the prevailing parties on the affirmed claims.  They are therefore not entitled to recover fees incurred in appealing this court's judgments on these claims under the FLSA, and I DENY their request for this category of attorney fees.

> ### C.       *Fees Incurred Appealing the Remanded Claims*

Plaintiffs also seek fees for the work expended on the remanded claims.  Plaintiffs seek compensation for 310.4 hours of counsel's time and 14.1 hours of paralegal time, for a total of $96,429.42 in fees.  (Decl. Egan [306] Ex. 5.)  Defendants do not dispute that fees for work on the remanded claims are recoverable; as discussed below, they do dispute that all of the hours reflected in the billing records were reasonable and necessary.

As prevailing parties under the FLSA, Plaintiffs are entitled to attorney fees on the remanded claims arising under that statute.  29 U.S.C. § 216(b).  The baseline method for determining a reasonable fee under federal fee shifting statutes is to determine the hours reasonably worked and multiply that by a reasonable hourly rate.  *See Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 563–64 (1986); *Ferland v. Conrad Credit*

*Corp.*, 244 F.3d 1145, 1149 n.4 (9th Cir. 2001).  District of Oregon Local Rule 54-3 provides

that counsel's hourly rate is determined using the most recent Oregon State Bar Economic

Survey.

### 1.    Reasonableness of Counsel's Billing Rates

Here, Plaintiffs seek compensation for counsel Mr. Egan's time at the rate of $305 an

hour and for paralegals' time at $125 an hour, the rates previously approved as reasonable by this

court.  (Decl. Egan [306] ¶¶ 12–13.)  Defendants do not contest the reasonableness of these rates.

I find that these rates are reasonable for the work done on the remanded claims.

### 2.    Reasonableness of the Hours Billed

Plaintiffs' counsel's billing documentation reveals that the fees sought for the remanded

claims fall into three categories: (1) work done on appeal at the Ninth Circuit; (2) work done

after remand but before the Rule 68 offer; and (3) work done in connection with the Rule 68

offer and the parties' dispute over its meaning and scope.

### a)    Work on Appeal

Defendants contest the reasonableness of the hours worked by Mr. Egan on the appeal of

the remanded claims.  I will first address their specific objections to certain items included as

attorney work in the billing records.  Defendants' objection to attorney billing for the following

two tasks is well-founded: (1) "Exchange correspondence with Ninth Circuit re deficiency in

brief format/proposed brief"; (2) "Review court order accepting brief; printcopies [sic] of brief;

examine and conform for binding; deliver to binder's."  (Def.'s Resp. [356] at 9–10; Decl.

Kreutzer [357-4] Ex. 5 at 9–10; Decl. Egan [306] Ex. 5 at 9.)  As to the first item, I conclude that

Defendants should not be responsible for the 0.2 hours counsel spent addressing the apparent

deficiency in Plaintiffs' Ninth Circuit brief at all.[11]  These hours were not reasonably and necessarily incurred; counsel of Mr. Egan's experience should have been able to comply with the Ninth Circuit's formatting requirements, and I decline to hold Defendants financially responsible for that failure.  As to the second item, I agree with Defendants that this work is administrative and not properly billable at counsel's billing rate.  I have therefore included the 2.4 hours spent "reviewing court order accepting brief," "print[ing ] copies of brief," and having the briefs bound at the $125.00 per hour paralegal rate.  This results in $300.00 in compensation for these tasks.

Defendants also object to two other entries as administrative: time spent corresponding with opposing counsel regarding a page extension request and time spent in the enforcement of subpoenas to two financial institutions.  (Def.'s Resp. [356] at 9–10; Decl. Kreutzer [357-4] Ex. 5 at 9–10; Decl. Egan [306] Ex. 5 at 9–10.)   These tasks are properly performed by counsel.  I have therefore included the 0.9 hours spent by counsel on these tasks in the lodestar.

Defendants' primary objection, however, is to the sheer number of hours sought for pursuing the remanded claims before the Ninth Circuit.  Mr. Egan has submitted documentation reflecting that he spent 244.7 hours working on Plaintiffs' appeal of only the claims that were ultimately remanded.  (Decl. Egan [306] Ex. 5 at 1–9.)  Defendant argue that this is simply unreasonable: an experienced attorney who specializes in wage and hour litigation should not

---

[11] The dates indicate that this task was related to the Cross-Appeal Reply Brief (Ninth Circuit ECF. No. [44]).  Plaintiffs received permission [45] to file an oversized brief.  *See* Order at 2, *Rother v. Lupenko*, 515 F. App'x 672 (9th Cir. 2013) (No. 4-35933).  It is not apparent from the Ninth Circuit's docket what the deficiency in the brief was; all that is noted is that the clerk "attached corrected PDF files of motion, brief and certificate of service."  ECF No. 44.  Without further explanation from Plaintiffs, I cannot conclude that the need for this correction was not due to counsel's error or was not a task better handled by administrative staff, and they have therefore failed to show that the time spent was reasonable and necessary.

need this much time to brief these issues, and it is simply unbelievable that Mr. Egan actually worked all of the hours included in the records submitted.  (Def.'s Resp. [356] at 10.)

Although Defendants put a great deal of effort into showing that Mr. Egan's hourly recording practices are untrustworthy, I ultimately need not comment on the adequacy of these practices because I conclude that even if Mr. Egan did spend approximately 250 hours  preparing the appeal on these issues, the amount of time was neither reasonable nor necessary.  These 244.7 hours were recorded in connection with just two issues on appeal: (1) whether this court abused its discretion in dismissing the claims of those Plaintiffs who did not appear to testify and (2) whether the late delivery of a final paycheck constitutes a minimum wage violation under the FLSA.

To put billable time sought in perspective, I note that even if Mr. Egan *billed* (not worked) at the rate of sixty hours a week, he would have spent just over four working weeks preparing these  two issues for the Ninth Circuit brief.  Both of these issues required straightforward argument, and neither involved highly complex or unexplored areas of law.  This massive amount of time is not reasonable or necessary for an attorney of Mr. Egan's extensive experience in wage and hour litigation to research and brief these two issues.[12]  I find that appeal of the remanded claims did not reasonably and necessarily require so many hours of counsel's time.  Furthermore, while the first category of remanded claims is composed solely of FLSA minimum wage claims, the second category—claims of the Plaintiffs who did not testify at trial—includes both FLSA claims and Oregon claims on which no fees are available.  I therefore

---

[12] Mr. Egan attests that he specializes in wage and hour collective and class actions. *See* Decl. Egan [306] ¶ 14.  His own declaration details over a dozen wage and hour collective and class action cases on which he has been lead counsel.  *Id.*  Moreover, records submitted by Defendants indicate that Mr. Egan has represented plaintiffs in at least twenty wage cases in Oregon state and federal courts between 2007 and the present.  (Decl. Gifford [358-1] Ex. A.)

reduce the number of hours of work on the appeal for which Plaintiffs may recover fees by twenty five percent.[13]  This results in an award of $55,975.13 for the appeal of the remanded claims.[14]

Plaintiffs' have submitted documentation that a paralegal worked a total of 0.2 hours while the case was on appeal.  I consider the task and the number of hours it took to perform it reasonable and necessary, and I therefore have included the $25.00 attributable to this work in the total.  As noted above, I have also included $300.00 for work performed by counsel Mr. Egan at the paralegal rate of $125.00 per hour.

b)  **Work on Remand Prior to Rule 68 Acceptance**

I conclude that 17.2 documented attorney hours and 8.8 documented paralegal hours are attributable to Plaintiffs' counsel's preparation to try the remanded claims after the Ninth Circuit's mandate issued and before the Rule 68 offer was tendered.  (Decl. Egan [306] Ex. 5 at 9–10.[15])  These hours were reasonably and necessarily spent preparing these claims for trial and

_____

[13] I decline to make any comparison to the number of hours billed by Defense counsel.  Such an approach is nowhere supported in federal case law on attorney fees, which are not to be awarded based on a bare formula.  Moreover, the time necessary to write an appellant's brief on any particular issue may well be highly divergent from the time necessary to write the appellee's brief on that same issue. I therefore find such a comparison inapt.

[14] Defendants also object to the inclusion of many entries of time described as "block-billed" because they included both legal research and writing the Ninth Circuit briefs on a particular issue. (Def.'s Resp. [356] at 8–9.)  In defense of the billing records, Plaintiffs argue that counsel does his legal research during the writing process, and that this is a common practice and should not be disallowed under the Oregon courts' rules regarding block billing.  (Pl.'s Reply [373] at 9.)  As explained above, the troubling aspect of Mr. Egan's billings records is not primarily that they show seemingly simultaneous research and writing in unusually small time increments—although they do—but the sheer number of hours spent working on the Ninth Circuit appeal.

[15] The first five entries on page 9 are not included in this calculation, as they reflect work done while the claims were on appeal before the Ninth Circuit. All of the other entries on page 9 are included, as are the first four entries on page 10.

preparing updated demand information requested by Defendants.  At the above rates, this work entitles Plaintiffs to recover $6,346.00.

**c)     Litigating the Rule 68 Acceptance**

I find that 45.9 documented attorney hours and 5.1 documented paralegal hours reflect work done litigating the meaning of the Rule 68 acceptance.  (Decl. Egan [306] Ex. 5 at 10–12.[16])  The scope of a Rule 68 offer under these circumstances was a question of first impression, and I consider the hours billed for this work reasonable and necessary.  Using the billing rates approved above, I therefore award Plaintiffs $14,637.00 in attorney fees incurred litigating the meaning of the Rule 68 offer and its consequences.

### D.     Fees for Fees

Finally, Plaintiffs seek compensation for "time spent either collecting previous judgments or preparing fee petitions subsequent to Plaintiffs' previous attorney fee requests."  (Decl. Egan [306] ¶ 9.)  In addition, they seek compensation for the numerous hours spent litigating the instant motion for attorney fees, which included "several rounds of motion practice," "discovery into [defense counsel's] billing records," and responding to Defendants subpoenas of Plaintiff's counsel's billing records from other cases.  (Pl.'s Reply [373] at 13; Supp. Decl. Egan [374] ¶ 27.)  They seek compensation for 19.5 hours of counsel's time spent before filing the motion and an additional 288.63 hours of counsel's time litigating that motion; as well as 7.2 hours of paralegal time spent before filing the motion and an additional 65.5 hours of paralegal time afterward.  (Decl. Egan [306] Ex. 7; Supp. Decl. Egan [374] ¶ 27, Ex. 17.)   At the relevant rates,

---

[16] On page 10 of this exhibit, the first four entries (for a total of 2.2 attorney hours and 0.4 paralegal hours) are not included in my calculation of time spent litigating the Rule 68 offer. These entries reflect work done prior to the Rule 68 offer. All entries on pages 11 and 12 are included.

this request amounts to an additional $93,979.65 for counsel's work[17] and $9,087.50 for paralegals' work.  As the request for fees for work done after the motion was filed was raised only in Plaintiffs' reply brief, Defendants have taken no position on the availability of fees for this work.

I find it reasonable to include attorney fees for counsel's time spent litigating the Motion for Attorney Fees.  Collateral litigation on the allowable amount of attorney fees was plainly contemplated by Defendants' Rule 68 offer, so they cannot be heard to complain that that collateral litigation cost something to Plaintiffs.  In light of their "clarification" of the offer, it surely was no surprise that Plaintiffs stridently litigated the inclusion of all claims in the case in the request for attorney fees.  Similarly, their own decision to conduct extensive discovery into Mr. Egan's billing practices was a calculated decision—they must have contemplated that fees would be incurred in opposing their broad subpoenas and then complying with this Court's enforcement of those subpoenas.  Plaintiffs are therefore awarded attorney fees compensation in the amount of $103,067.20, based on 19.5 hours of counsel's time prior to filing the motion and 288.63 hours afterward; and 7.2 hours of paralegal time prior to filing the motion and 65.5 hours afterward.  (Decl. Egan [306] Ex. 7; Supp. Decl. Egan [374] Ex. 17.)

### E.    Additional Costs

Plaintiffs seek compensation for certain litigation expenses that are billed separately from counsel's billing rate.  They seek $2,691.52 in expenses incurred prior to the motion for attorney

---

[17] Mr. Egan's declaration states that the total of 288.63 attorney hours worked after the filing of the motion would result in $88,033.17 at the $305 per hour rate.  (Supp. Decl. Egan [374] Ex. 17 at 10.)  This arithmetic is incorrect, however, as 288.63 multiplied by 305 equals 88,032.15.  Because the documentation submitted by Plaintiffs supports the slightly smaller award of $88,032.15, it is this number that I have used to calculate the total fees for Mr. Egan's time.

fees and an additional $742.77 incurred subsequently.[18]  (Decl. Egan [306] Ex. 8; Supp. Decl. Egan [374] Ex. 18.)  Although these costs and expenses are not broken down between the affirmed and remanded claims and other tasks, it appears that most of these costs and expenses would have been incurred even if only the remanded claims were at issue.  I find them reasonable and necessary, and therefore award an additional $3,434.29 in costs and expenses.

## CONCLUSION

The Court's Supplemental Judgment [306] includes the remanded claims only.  Plaintiffs' Motion for Supplemental Attorney Fees [304] is GRANTED in part and DENIED in part. Plaintiffs are awarded $183,784.62 in attorney fees and costs.

IT IS SO ORDERED.

DATED THIS __13th__ day of August, 2014.


/s/ Michael W. Mosman
MICHAEL W. MOSMAN
United States District Court

---

[18] Again, counsel's calculation of the total amounts sought differs from the Court's. Mr. Egan states that the total amount of expenses add up to $742.78.  I calculate $742.77.  I rely on the numbers listed in Mr. Egan's spreadsheet, not his arithmetic, and therefore I have calculated allowable expenses using my own.